IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MAXINE BARLOW,                              )
                                            )
          Plaintiff,                        )
                                            )
v.                                          ) CIVIL ACTION NO. 99-PWG-2922-S
                                            )
BOOKER T. WASHINGTON INSURANCE              )
COMPANY,                                    )
                                            )
          Defendant.                        )

**ENTERED**

**SEP 1 8 2003**

<u>MEMORANDUM OPINION</u>

Maxine Barlow, plaintiff in this action, filed a complaint in this court raising federal claims for sex and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

Ms. Barlow alleges that defendant Booker T. Washington Insurance Company discriminated against her based on sex and age when it failed to promote her and that defendant then retaliated against her for filing a charge with the Equal Employment Opportunity Commission. This matter is before the court on defendant's motion for summary judgment (doc. # 11).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due

to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed, or if disputed, viewed in the light most favorable to Ms. Barlow, the nonmoving party. Ms. Barlow began working at Booker T. Washington Insurance Company in 1973 as an agent in the Demopolis district office. In 1974, she was promoted to assistant manager and in 1975 she was promoted to district manager for the Demopolis. (Barlow depo. at 24-26). When the Demopolis district office merged with the Tuscaloosa district office in 1979, Ms. Barlow became the district manager for the Tuscaloosa office. (Barlow depo. at 28). In

1995, the Tuscaloosa office merged with the Five Points West office and Ms. Barlow was made an associate manager. (Balton depo. at 29, 71-72). In 1997, plaintiff was transferred to the position of associate manager in the North Birmingham Service Center when the Five Points West office was merged into the North Birmingham regional office. In March, 1998, Ms. Barlow transferred to defendant's home office and assumed an assistant vice president position as conservationist which she still holds. [1] In her current position, Ms. Barlow has, among other things, "help[ed] with our customer service." (Balton depo. at 73).

In early to mid 1996, the nine district offices were reduced and combined into three regional service centers. The title for the head of each office was changed from district manager to regional manager. (Balton depo. at 23-24). The three new regional manager positions were not posted but were filled by the three most senior district managers. (Clay depo. at 62,78). Seniority was the only criterion considered for these selections. (Clay depo. at 78). Essic Pack was appointed to the Montgomery regional manager position, (Clay depo. at 62-63), Willie Perry was appointed to the Mobile regional manager position, (Balton depo. at 31), and W.I. Stovall was appointed to the North Birmingham regional manager position (Balton depo. at 29).

The Birmingham regional manager position has had four incumbents since its creation in 1996: Stovall, Johnny Howze, Hiawatha Studdard, and Clifford McKinney. In November, 1996, Stovall notified defendant that he intended to retire, and the position was posted with the increased job requirements of a four year college degree. (Balton affidavit). Stovall decided to wait a year

---

[1]  There is some a dispute as to Ms. Barlow's current job title. Ms. Barlow argues that she is a conversationist while defendant stated that she is director of special markets. Both Ms. Barlow and defendant state that, in her current position, Ms. Barlow is also an assistant vice president.

before retiring and remained in the position; however, Ms. Barlow did not apply for this position when it was posted. (Balton affidavit).

Also, in November, 1996, defendant posted the position of supervisor of customer service. Ms. Barlow applied for this position but the position was awarded to Walter Stuckey in January, 1997. (Balton affidavit). In the fall of 1997, Stovall retired and Howze was appointed interim regional manager without the position first being posted. (Balton affidavit, Clay depo. at 64-65, Balton depo. at 38-39). Howze had previously been a district manager and an associate manager but for less time than Ms. Barlow; however, Howze had a four year college degree. (Balton affidavit, Balton depo. at 30, Barlow affidavit at 24). In May 1988, Howze was removed from the interim position and replaced by Studdard on an interim basis. Again, the position was not posted. (Balton depo. at 36, Clay depo. at 66-67).[2]

In July 1998, the position of claims supervisor was posted. (Clay affidavit). Ms. Barlow applied for and was interviewed for this position even though her application was a day and a half late. (Clay affidavit). The position was filled by Patricia McLemore who had a degree from a four year college and had been serving as the ranking person in claims for several months during 1998 while both the director of claims and assistant director of claims were out on sick leave. (Clay affidavit, Balton affidavit).

In December 1998, McKinney resigned as vice president and chief marketing officer and assumed the subordinate position of regional manager without the position being posted. McKinney

---

[2] The court has been unable to locate in the record whether Studdard had a four year degree; however, defendant in the brief in support of motion for summary judgment states that Studdard had a degree from a four year collate and cites to the affidavit of Kirkwood Balton. (Document #12, p.5). The affidavit, however, does not state that Studdard had a college degree. (Balton affidavit). Ms. Barlow, however, has not alleged that Studdard did not have a college degree. Therefore, the court will not consider this to be an issue as it is not argued in Ms. Barlow's opposition.

had a four year degree.[3/]  (Balton affidavit).  The regional manager position has never been held by a woman. (Balton depo. at 48).  Ms. Barlow does not have a college degree.  (Barlow depo., p.10).

On December 15, 1998, Ms. Barlow filed an EEOC charge (Barlow depo., Exhibit 21), alleging that she was discriminated against based on age and sex when Clifford McKinney was promoted to the regional manager position on December 7, 1998.  On April 13, 1999 Ms. Barlow amended her EEOC charge (Barlow depo., Exhibit 21) alleging that she was discriminated against based on age, sex and in retaliation for filing the original EEOC charge when Patricia McElmore was promoted to the position of Head of Claims Department.

I.  Time barred claims

Defendants argue that the sex discrimination charges based on the appointments of Stuckey to the customer service position and Studdard to the regional manager positions and the age discrimination charge based on the appointment of McElmore to the claims supervisor position are time barred because Ms. Barlow failed to file an EEOC charge within the 180 day time frame prescribed by 42 U.S.C. § 2000e-5(e)(1).  Ms. Barlow does not dispute that she did not file EEOC charges complaining of the above actions within 180 days of the appointments.  Instead, she relies on the continuing violation doctrine and cites *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793 (11th Cir. 1988) as authority.  The portion of the opinion relied on in *Roberts* was subsequently

------

[3/]     Ms. Barlow's argument that McKinney's management ability had been criticized (Clay depo., exh. 2) and that she "had suffered no such criticism," and had been given ratings of "exceeds standards" and "meets standards" on her two performance appraisals that were conducted in 1998 (Clay depo., exh .4, 5) is misleading.  It is true that McKinney's management skills were given a "needs improvement" rank on the "Critical Skills and/or Knowledge Gap Analysis Form;" however, overall with respect to the other ten items on the form, McKinney received ranks of effective and highly effective.  Ms. Barlow was apparently not ranked on this particular form.  When ranked on the same "Graphic Rating Scale" form in August 1998, Ms. Barlow who was ranked by McKinney scored a 30 which corresponds to "exceeds standard" (Clay depo., exh. 4) and McKinney who was ranked by Balton also scored a 30 which again corresponds to "exceeds standard."  (Balton depo., exh. 13). This form does not have a ranking for management ability.

withdrawn.  See *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549 (11th Cir. 1988).  This court

is therefore hesitant to rely upon *Roberts I*.  Both parties, however, rely upon *Roberts I* to support

their arguments.  In *Roberts I*, the Eleventh Circuit Court of Appeals stated:

> Under the continuing violation doctrine, "[i]f a series
> of discrete acts of discrimination continues into the
> statutory filing period, then the cause of action is
> considered timely filed.  ...  To revive the otherwise
> time-barred claim under the doctrine, however, it
> must be part of a pattern or continuing practice out of
> which the timely-filed incident arose.  ...
>
> When an employee files a timely charge for a
> discriminatory act, he may recover for previous acts
> of discrimination which would otherwise be time-
> barred to the extent that he can meet his burden of
> proving the existence of a substantial nexus between
> the acts. ...
>
> The continuing violation doctrine does not exist to
> give a second chance to an employee who allowed a
> legitimate Title VII claim to lapse.  It is only when a
> substantial nexus exists between a timely-filed claim
> and an otherwise time-barred claim that they may be
> viewed as constituting a single violation, part of
> which falls within the limitation period.  ...
>
> In determining the existence *vel non* of such a nexus,
> a court should not rely upon a superficial factual
> analysis, but rather, should refer to a variety of
> factors.  Such factors include whether the claims were
> related in subject matter, frequency, and permanence
> (*i.e.*, whether the act was sufficiently permanent in
> nature so as to "trigger an employee's awareness of
> and duty to assert his or her rights").  ...

835 F.2d 799-800.  (citations omitted.)

Ms. Barlow argues that the nexus is satisfied with respect to the regional manager position because:

> Here, all three selections suffer the same
> infirmities–they were secretive selections in which the

positions were not announced and the employees, like Barlow, not informed of the opportunity to compete. The three incidents occurred within a time frame of approximately one year, clearly sufficient to establish frequency. *See Roberts* at 801 ("under appropriate circumstances, two incidents three years apart may be enough to demonstrate the existence of a continuing violation .... For example, two identical discriminatory incidents separate by three years might properly constitute a continuing violation.") Finally, regarding the permanence factor, Balton's testimony reflects the uncertainty of the status of the Regional Manager position at the time Howze and Studdard were appointed to it. Balton depo. at 38-40. It would be unreasonable to have forced her to file an EEOC charge challenging these acting appointments when there was a substantial likelihood that the position would soon have been filled on a permanent basis, as Balton testified they were attempting to do, and Barlow allowed to compete for it.

(Document #15, p.27).

Assuming the *Roberts I* language regarding the theory of continuing violation is still the law in the Eleventh Circuit, the court is inclined to agree with the plaintiff that there was a continuing violation with respect to the regional manager positions. The same regional manager position was filled three times in approximately a year's time. In each instance there was no posting of the position, and arguably, the fact that the first two appointments were interim appointments would have been insufficient to trigger Ms. Barlow's awareness of and duty to assert her rights. The sex discrimination claims based on the award of the regional manager positions would be timely under *Roberts I.*

The challenges to the appointments of Stuckey to the position of customer service supervisor and McLemore to the position of head of claims, however, would not be timely under the continuing violations theory. Unlike the regional manager positions, both the 1996 customer service and 1998

7

claims positions were posted prior to being filled and Ms. Barlow applied for both positions and was interviewed for the claims position.    The only similarity between these incidents and those involving the regional manager position is the fact that Ms. Barlow did not receive a promotion. "Mere commonality of effect is not sufficient to invoke the continuing violation doctrine." *Roberts I*, 835 F.2d at 801.  Also, it is significant that Ms. Barlow's theory of discrimination with respect to the claims position  is based on age while her theory of discrimination with respect to the regional manager positions and customer service positions is based on sex.  The claims relating to the customer service and claims positions would be time barred under *Roberts I*.

The Eleventh Circuit Court of Appeals embraced a theory of continuing violation involving employment practices in *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir. 1992), wherein the court stated:

> The standard for determining whether an employment practice constitutes a continuing violation was set forth in *Gonzalez v. Firestone Tire & Rubber Co.,*, 610 F.2d 241 (5th Cir. 1980). ...
>
> Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice. However, where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e-5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

975 F.2d at 796.

Because Ms. Barlow complains of three incidents involving the non-posting of a position which was subsequently filled each time by a male and because Ms. Barlow filed an EEOC charge within 180 day of the last occurrence, the court will treat the appointments of Howze and Studdard as timely by virtue of the timely filing of an EEOC charge based on the appointment of McKinney.

Under the continuing violation theory in *Beavers*, the customer service and claims positions would not be part of the same employment practice evidence in the selection of the regional manager because both of these positions were posted and one of the positions was filled by a woman. Under the continuing violation theory set forth in either *Roberts I* or *Beavers*, the result would remain the same – all three challenges regarding the regional manager positions would be considered timely while the challenges regarding the customer service and claims positions would be untimely.

II.   Sex discrimination based on defendant's failure to
      promote Ms. Barlow to regional manager position

As previously stated, the court will assume that none of the challenges regarding the regional manager positions is time barred. Ms. Barlow alleges that she was discriminated against with respect to these positions based on sex. Where, as here, Ms. Barlow seeks to prove intentional sexual discrimination by using circumstantial evidence of intent rather than direct evidence, the court applies the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Ms. Barlow first bears the burden of establishing a *prima facie* case of discrimination. *Id.* at 802. If she establishes a *prima facie* case of discrimination, the burden then shifts to the employer to state a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002). The burden then shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

In order to establish a *prima facie* case of sex discrimination for failure to promote, Ms. Barlow must show: (1) she belongs to a protected group (2) she was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected, and (4) after her rejection, the position was filled by a person outside of plaintiff's protected group. See *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998) *cert. denied,* 528 U.S. 809 (1999); *Gaddis v. Russell Corporation*, 242 F.Supp.2d 1123, 1135 (M.D. Ala. 2003). As a woman, Ms. Barlow falls within a protected group, she was not chosen for the regional manager position, and in all three instances, a man was chosen to fill the position. The only issue in determining whether Ms. Barlow has proved a *prima facie* case is whether she was qualified for the regional manager position.

Defendant argues:

> With respect to the regional Manager's position plaintiff cannot establish that she was qualified for the position. Nor can she overcome defendant's legitimate articulated reason that Studdard and McKinney were more qualified for the position than she.

(Doc #12 , p. 10).

While <u>relative</u> qualifications are not part of the *prima facie* case, *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998), *cert. denied*, 528 U.S. 809 (1999), Ms. Barlow must still show as part of her *prima facie* case that she was qualified. In *Walker v. Mortham*, the court noted that there were

10

two conflicting lines of precedent in regard to the proper *prima facie* standard in a failure to promote case.

In *Crawford v. Western Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980), the court held:

> [P]laintiffs may establish a *prima facie* violation by showing that they are members of a group protected by Title VII, that they sought and were qualified for positions that [the defendant employer] was attempting to fill, that despite their qualifications they were rejected, and that after their rejection Western Electric either continued to attempt to fill the positions or in fact filled the positions with [persons outside the plaintiff's protected class.]

Subsequently, in *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983), the court stated *in dicta*

> A plaintiff may establish a *prima facie* case of promotion discrimination by proving that he or she is a member of a protected minority, was qualified for and applied fo the promotion, was rejected despite these qualification, and that other employees with equal or lesser qualifications who were not members of the protected minority were promoted.

The *Mortham* court concluded that it should follow *Crawford*, the earliest case, due to the importance of the prior precedent rule which "is essential to maintaining stability in the law." 158 F.3d at 1188. In *Walker v. Mortham*, the Eleventh Circuit thus retained as a *prima facie* element of the failure to promote the requirement that the applicant be qualified while rejecting as a *prima facie* element any requirement that the plaintiff prove the relative qualifications.

It is undisputed that, subsequent to the first selection of regional managers, the description of the position of regional manager was changed to require a degree from a four year college. It is also undisputed that Ms. Barlow did not have a college degree but all three of the men appointed to

11

the position did.  Because Ms. Barlow did not meet a specified requirement for the regional manager

position, she has failed to show that she was qualified for the position.[4/]

   Ms. Barlow argues:

> [T]he testimony of Human Resources Director Bettye
> Clay showed that Barlow met the qualifications
> established for the Regional Manager when the
> position was first created in 1996 – experience as a
> District Manager – and that those qualifications were
> changed in 1996, when Barlow was the next likely
> candidate for the position, to require a college degree.
> Clay's testimony was that experience as a District
> Manager was the only criterion on which selections
> for the Regional Manager positions were based.  Clay
> depo. at 78 ..., 63..., 64... Barlow had more seniority
> as a District Manager than any of the appointees –
> Howze, Studdard, or McKinney  – to the Regional
> Manager position.

(Barlow aff. at 24).

In her affidavit, however, Ms. Barlow specifically addresses only her experience as compared to

Studdard and Howze – not as compared to McKinney:

> 24.   At the time Hiawatha Studdard was appointed Regional
> Manager I had more years of experience as a District
> Manager than Studdard.  At the time Howze was appointed as
> Regional Manager, I also had more years of experience than
> he did.

(Barlow aff. at 24).

   In her affidavit Ms. Barlow also states that she was qualified to perform the duties of the

Regional Manager job because she had previously performed them while holding the job of district

manager.  (Barlow aff. at 4-19).  In her affidavit, Ms. Barlow simply tracks the language of the

---

[4/]    Because the regional manager position was not posted the court will assume that Ms. Barlow did not have to
prove as part of her *prima facie* case that she applied for the position. See *Carmichael v. Birmingham Saw
Works*, 738 F.2d 1126, 1132-33 (1984).

responsibilities of the regional manager.  (Balton depo., exh 3).  She conveniently ignores the

portion of the job description entitled Education and Experience which provides

> Minimum of four years direct experience in insurance
> sales.  A degree from a four-year college with courses
> in management and marketing.  Working knowledge
> of computer technology.  Excellent oral and written
> communication  skills  and  ability  to  motivate
> personnel.

(Balton  depo.,  exh.  3,  p.  2).    In  other  words,  Ms.  Barlow  confuses  qualifications  with

responsibilities.

Ms. Barlow argues that because Essie Pack, the first regional manager in the Montgomery

regional office, did not have a college degree (Clay depo. at 63), the college degree requirement

cannot be used to defeat the qualification prong of a *prima facie* case; however, this overlooks the

fact that Essie Pack was appointed regional manager <u>prior</u> to the job description being changed to

require a college degree.  Ms.  Barlow also argues that she met the qualification established for the

regional manager when the position was created in 1996 because she had experience as a district

manager and that as among Howze, Stoddard or McKinney, she had more seniority as a district

manager. (Clay depo. at 78).  Ms Barlow's untenable argument implies that the employer can never

change the qualifications for a position.

Ms. Barlow further argues that defendant has not produced any evidence that the four year

college requirement is a job-related requirement.  Unlike the cases cited by Ms. Barlow, this case

is not a disparate impact case but, rather, it is a disparate treatment case.  In *Welborn v. Reynolds*

13

*Metal Co.*, 810 F.2d 1026, 1028 n.2 (11th Cir. 1987), the Eleventh Circuit Court of Appeals

explained the difference between a disparate impact case and a disparate treatment case:

> A disparate impact case is one in which the plaintiff alleges that a facially neutral test or employment criterion which disproportionately disqualifies a protected class from employment, promotion, or the like is not job related. ... (citations omitted). This is simply not the allegation in this action. *Welborn* has not attacked any test or employment criterion; instead she has alleged that she was treated less favorably than her peers because of her sex. This action therefore alleges disparate treatment.

See also, *MacPherson v. University of Montevallo,* 922 F.2d 766, 768, n1 (11th Cir. 1991).

Ms. Barlow has not complained  of and submitted supporting evidence that the college degree

requirement excludes a disproportionate number of women.  Rather, she complains that because of

the college degree requirement <u>she</u> was not considered.  Ms. Barlow has clearly proceeded under

the disparate treatment theory rendering her argument that a college degree is not a job related

requirement without merit as to whether she can establish a *prima facie* cause of decision.

Because she has failed to show that she was qualified for the position of regional manager

and thus failed to carry her burden of establishing a *prima facie* case, it is unnecessary for the court

to go further with the *McDonnell Douglas* analysis.  Defendant is entitled to summary judgment on

this claim.

III.   <u>Retaliation</u>

Ms. Barlow alleges that defendant acted in retaliation for Ms. Barlow's EEOC charges when

it placed her on administrative leave with pay for two days and around the same time took away her

computer password.  She testified that after filing her EEOC charge she was accused of tampering

with the policyholder's premium notice on the computer and was placed on administrative leave.

14

(Barlow depo. at 253, 256).  She also testified that when he learned that the error was not her fault, the vice president apologized to her. (Barlow depo. at 274).  At approximately the same time as the accusation about tampering with the premium notices, Ms. Barlow's password was taken away. (Barlow depo. at 276).

To establish a *prima facie* case of retaliation under Title VII, Ms. Barlow must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and adverse employment action. *Bass v. Board of County Commissioners, Orange County, Florida*, 256 F.3d 1095, 1117 (11th Cir. 2001).

Ms. Barlow filed her EEOC charge on December 15, 1998 and amended the charge on April 13, 1999.  Because she filed an EEOC complaint prior to the allegedly retaliatory actions complained of, she has shown that she engaged in a protected activity. *Bass, supra; Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998).

Defendant argues that Ms. Barlow cannot satisfy the adverse employment action requirement of a *prima facie* case of retaliation.  "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir 200 ).  In *Bass*, the Eleventh Circuit Court of Appeals described some of the conduct that would constitute an adverse employment action:

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee. (citation omitted). "Conduct that falls short of an ultimate employment decision must meet 'some threshold level of substantiality ... to be cognizable under the anti-retaliation clause'" of Title

15

> VII.   ...   While "not everything that makes an employee unhappy is an actionable adverse action," ... conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action under Title VII. ... The question of whether an employee has suffered a materially adverse employment act will normally depend on the facts of each individual case. ...

*Bass*, 256 F.3d at 1118 (citations omitted).

The only actions considered by the court are those actions specifically identified by Ms. Barlow as allegedly retaliatory – her placement on administrative leave and the taking of her computer password.  (Plaintiff's Opposition, doc. # 15, p.32).

In deposition, Ms. Barlow testified as follows:

> Q:   ... You've talked about this incident involving the computer and being sent home.  You didn't lose any pay from that, did you?
>
> A:   Administrative leave with pay, I think.
>
> Q:   You didn't lose any benefits from that, did you?
>
> A:   I lost a lot from that.
>
> Q:   What benefits did you lose?
>
> A:   Embarrassing.
>
> Q:   Did you lose any benefits?
>
> A:   Everybody talking all over the company that I had been fired, been with the company so many years, and wanted to know my reasons they getting rid of me.
>
> Q:   Who talked about you being fired?
>
> A:   Well, one thing, the maintenance man, he was one of them.
>
> Q:   Tell me everybody who talked about you being fired.

16

(Barlow depo. at 264-65.)  (Emphasis added.)

Upon further questioning, Ms. Barlow could not recall anybody except the maintenance man who was talking about her "being fired."  (Barlow depo. at 265-69).  She also testified no one from management said that she had been fired as far as she knew.  (Barlow depo. at 269).

Ms. Barlow testified that her password was taken away from her but was given back "when I asked for it back" but then she testified that  "but it took about two weeks" to get her password back.  (Barlow depo. at 275-76).   She further testified:

> Q:     Now, you haven't been demoted because of you not being able to access computer files, have you?
>
> A:     Not that I know of.
>
> ...
>
> Q:     You've not had any loss of pay because of your inability to access computer files, have you?
>
> A:     No.
>
> Q:     Ma'am?
>
> A:     Not that I know of.
>
> ...
>
> Q:     You haven't had any problem with your other job assignments because of your inability to access the computer files, have you?
>
> A:     I can't answer that.
>
> Q:     You haven't been given any low evaluations because of your inability to access the computer files, have you?
>
> . . .
>
> A:     I can't answer that.

17

Q:      You, in fact, haven't had any problems doing your job as a special markets director because you didn't have access to the computer files, have you?

A:      Not in special markets.

                              . . .

Q:      In fact, Mr. Cook offered you the job of director of sales, didn't he?

A:      Director of sales?

Q:      Yes, ma'am.

                              . . .

A:      Yeah, he offered it to me, and I gave him my reason why I couldn't accept it.

(Barlow depo. at 276-79).

It is clear from Ms. Barlow's deposition testimony that the placement of Ms. Barlow on administrative leave WITH pay and the temporary taking of her computer password did not tangibly or negatively affect her employment, compensation, or conditions of employment. Because Ms. Barlow has failed to establish the second prong, an adverse employment action, she has failed to prove a *prima facie* case of retaliation, and summary judgment is due to be granted on the retaliation claim.

Based on the foregoing defendant's motion for summary judgment (document #11) is due to be GRANTED. A Final Judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

DONE this the ___18th___ day of September, 2003.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

18